TRUMBULL ELECTRIC MFG. CO. v. CONNECTICUT ELECTRIC MFG. CO.

(Circuit Court, D. Connecticut.　March 19, 1909.)

No. 1,232.

PATENTS (§ 328*)—ANTICIPATION—ELECTRICAL SWITCH AND CUT-OUT.
　　The Trumbull patent, No. 820,076, for a panel switch and cut-out, if conceded to disclose invention, which is very doubtful, is void for anticipation.
　　[Ed. Note.—For other cases, see Patents, Dec. Dig. § 328.*]

In Equity.　On final hearing.

George B. Ward and John W. Joy, for complainant.
Thomas F. Ryan and Hubert Howson, for defendant.

PLATT, District Judge. This is a suit in equity, based upon letters patent No. 820,076, dated May 8, 1906, owned by complainant as assignee of John H. Trumbull, for panel switch and cut-out. There are five claims in the patent and all at issue.

The specifications set forth two objects of invention: First, to form a compact, simple device, which may be arranged in several combined units, for controlling various circuits, capable of use with either a two or three wire system; second, to combine in a single structure an automatic cut-out and manually operated switch for controlling an electric circuit, and to arrange the line wire connections for said combination so that they will lie in parallelism. Figs. 2 and 3 of the drawings show the devices referred to in this latter-stated feature of invention, and may be used to exploit the other feature of invention, and are so shown in Fig. 1, which pictures that object, but other forms might be used. The first three claims are directed at the first feature of invention, and claims 4 and 5 at the second feature.

The defenses to which this memorandum will be confined are: (1) Lack of invention. (2) Prior invention.

To understand the situation it is only necessary to take a running

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

glance at the prior art. It had long been a common expedient in the electrical art to apply fuse blocks to either the main or branch line wires, so that in case the wire became too heavily loaded with electricity, or other abnormal situations arose, the fuse would become ignited and thereby produce a short circuit, and these fuse blocks were generally known as "automatic cut-outs." Manual switches were common and well-known devices upon both main and branch line constructions. It was also well understood how to combine in one structure the manuel switch and the main line automatic cut-out.

When boiled down it would seem that the patentee, with all that light shining upon him, only claims to have shown how to combine in one structure, or mount upon one base, the well-known manual switch and the well-known branch line cut-out. It is true that he claims to have done it in such a way that a large number of the unitary combined structures can be mounted, side by side and end to end, and touching each other, and that when so mounted the complete device is compact, satisfactory, easily produced, and comparatively inexpensive; but he says that it is essential in getting this result to put in the "barrier, 12," between the wires. This expedient was ready at hand in the art. The combining upon a panel of a plurality of the original combinations was also foreshadowed in a variety of ways, and particularly in the Hornsby & Anger patent, No. 718,460, January 13, 1903. We have no means of knowing that the patentee's conception travels back of that.

When studying the doings of the Patent Office in respect to different claims of invention, I am every now and then impressed with the mysterious things which occasionally come forth from its recesses, and I am bound to say that the reason for finding invention in the claims of this patent escapes me. In the first three claims the inventive thought is to build up a panel board from units, and the units are described in very general terms. It may be fair to assume, however, that the thought was directed to the units described in the next breath in claims 4 and 5. We must make that assumption in order to get even a hint of novelty, and even then I cannot find any invention in the thought. The ordinary mechanic could not help doing what the patentee has explained to us so minutely and diffusely, and in truth in such a cumbrous way as to almost disguise any thought whatever.

I could place my decision there if it were necessary; but I appreciate the uncertain foundation upon which the dividing line between mechanical skill and invention rests, and am aware that, although to my mind the things which the patentee claims to have discovered would have been obvious to the average mechanic in the electrical art, to another mind invention may be labeled upon his disclosure. Assuming, then, the existence of the spark divine, it seems too plain to demand extended comment that the same spark twinkled in other brains before it appeared in the patentee's. The letter of E. G. Bernard of October 29, 1901 (Defendant's Exhibit 68), shows beyond peradventure that the patentee's conception was at that time clearly defined in Mr. Bernard's mind, and that it covered, not only the individual blocks, but the assembling of such units upon a panel. Nothing is omitted, except the "barrier, 12," of claim 5, which is obviously

nothing more than adding to the combination a well-known safety device, which performs no new function and adds no new result. Placing the switch and fuse on one panel does not give "barrier, 12," anything to do that it had not been doing before the combination of the separate old devices.

The proofs further establish clearly that Bernard's conception was followed by a working wooden model, produced some time in September, 1902, and by a completed drawing in October, 1902, from which a completed device was approved in October, 1903, and sales of the device were made and the goods actually shipped in January, 1904. Here is plain proof of invention and of its practical use prior to even the application for the patent in suit, viz., May 25, 1904, forgetting, as we must, the date of the patent, because, for some reason or other, it did not come out of the office until May 8, 1906. For the sake of brevity, I refrain from commenting upon the testimony as to earlier invention and reduction to practice by parties having to do with the Banner device.

In this situation the obligation upon the patentee to carry his date of conception and reasonably prompt reduction to practice back of the others who have told their plain tales bears down with tremendous force. That he has failed to carry that burden must be obvious to an unprejudiced reader of the testimony. As against the G. E. Bernard device he has no standing. As against the Banner device it is possible that the Wheeler drawing may carry his date of conception back of Harvey's disclosure. It is not necessary to my final conclusion to discuss the value of that drawing as a bit of evidence, because, if it is given full probative force, the fact remains that the Harvey conception was embodied in practical form as early as November, 1903, at which times the devices had been made and sold, catalogued, and pictured in trade journals.

All this, it will be noticed, was prior to the application for the patent in suit, and opens wide a possibility that patentee's conception had reservoirs to draw upon other than his own individual inventive genius. Furthermore, all this has to do with single combination switch and cut-out branch blocks, and the first sign that the assembled panel idea was in the patentee's mind appears in the leaflet, Exhibit F, dated March, 1904; whereas, there is much testimony that Bernard and Harvey knew at the outset how the single combined blocks could be assembled on a panel.

Such in the rough are some of the thoughts which force me to my final conclusion. The gist is this: There is the gravest doubt whether there is any invention in the patent; but, granting that there is invention, it is so plain that he who runs may read the fact that other people had the thought before the patentee had it. If they looked at the matter as I do, it is not strange that they did not consider it worth the trouble and expense of asking for a patent.

It is obvious that the view taken of this controversy renders it unnecessary to discuss many of the contentions presented by counsel, both orally and in printed briefs.

Let the bill be dismissed, with full costs to the defendant.